

26 C.C.P.A.(Patents)

## In re KEHL.
### Patent Appeals No. 4043.

Court of Customs and Patent Appeals.
Jan. 23, 1939.

Charles C. Scheffler and Eugene L. Greenewald, both of New York City (Warren J. Willis and Alfred E. Page, both of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

By appeal there is brought before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner rejecting as non-patentable over prior art cited eight claims numbered 21 to 28, inclusive, of an application for patent for a gas burner device. Several claims stand allowed.

All of the appealed claims are for structure. The assignments of error treat all the appealed claims as a group, and, in addition, error is specially assigned as to claims 27 and 28.

For illustrative purposes it is deemed sufficient to quote claims 21 and 28:

"21. A gas burner comprising, in combination, a head having a gas inlet, a plurality of outlet passages, and a gas distributing chamber between said inlet and said passages; and a group of nozzles secured to said head and severally communicating with said outlet passages, at least one of said nozzles having a jointed portion adapted to permit universal angular adjustment of such nozzle and its axis laterally in all directions relatively to the axis of the outlet passage communicating with such nozzle and relatively to the axes of the other nozzles associated therewith, whereby the arrangement of such group of nozzles may be varied.

"28. In combination, a head having an outlet passage; a nipple secured to said head and having a bore communicating with said passage; a tubular member having a freely movable end; an outlet tip secured to such freely movable end; said nipple and the other end of said tubular member having cooperating portions providing a ball-and-socket joint adapted to permit the adjustment of said tip and the free end of said tubular member laterally in all directions relatively to the axis of said bore; and adjustable means for clamping said other end of said tubular member

194

to said nipple to retain said tip and tubular member in any one of the positions to which they may be adjusted."

The prior art references cited are: Tilley (British), 23,810, November 3, 1904; Trost, 1,359,128, November 16, 1920; Underwood et al., 1,739,929, December 17, 1929; Coutu, 1,936,499, November 21, 1933.

The following general statement as to appellant's gas burner is taken from the brief filed before us on his behalf: "The claimed invention consists of a group of nozzles connected to a common header, each nozzle including an intermediate jointed portion which permits substantially universal adjustment of the outlet tip of the nozzle with respect to the header. In addition, certain of the rejected claims include a clamping means for holding the outlet tip of the nozzle in adjusted relation with respect to the header."

In the decision of the board it is said: "* * * Briefly described the device consists of a header or manifold to which are secured a plurality of nozzles by ball and socket joints so that the nozzles may be adjusted in different angular positions."

The examiner rejected claims 21 to 24 on the ground that they "involve nothing patentable over Trost and Tilley." Claims 25 and 26, which are similar to 21–24, but, in addition, specify a ball-and-socket joint, he rejected, saying, in substance, with respect to the limitation embracing the joints, that the use of ball-and-socket joints is common in the gas burner art as illustrated in the patents to Coutu and Underwood et al., and holding that no invention was present in substituting such joints for the flexible joints shown by the patent to Tilley. As to claims 27 and 28, which specify clamping means (a locking nut hereinafter described), he held that the Underwood et al. patent shows an adjustable clamping means and said that "in substituting the Underwood joint for the flexible joint in Tilley in the combination shown in Trost, these claims are substantially met."

In its decision the board mentioned specifically only the Trost and Underwood et al. patents, saying that the others "are deemed to be cumulative only and need not be referred to further."

Figure 2 of appellant's drawings is herewith reproduced along with Figure 2 of the drawings of the Trost patent.

KEHL'S APPLICATION

TROST'S PATENT

In appellant's above drawing, the head may be identified by the letter H, the outlet passages by the numerals 35, the distributing chamber by the numerals 33, and the nozzles by the letter N. The nozzles are connected by universal joints which have rotatable lock nuts indicated by the numerals 44.

Pertinent features shown in the Trost drawing are a burner head, a, into which are screwed burner tubes, g, the ends of which (as shown in another figure) are bent to supply fuel to the burner nozzles, h. The patent teaches that by reason of the construction shown, the burner tubes, g, may be turned to any desired position, and the nozzles be separated or brought closer together as desired.

The board, after its description of appellant's device above quoted, said: "The patent to Trost discloses a burner of the same type. Unfortunately the structure disclosed in this patent is one in which the nozzles cannot possibly be assembled in the manner described in the patent, for it is clear that they could not be screwed in the sockets of the manifold in the manner described. However, it does show the broad concept of making such nozzles capable of restricted adjustment. * * *"

Based upon the foregoing, it is argued on behalf of appellant that the Trost device is inoperative and it is insisted that the board erred in relying upon a patent covering an inoperative device, and also in holding that the Trost patent showed "the broad concept of making such (applicant's) nozzles capable of restricted adjustment."

Much of appellant's brief is devoted to argument upon the question of the alleged inoperativeness of the Trost device, and numerous authorities are cited in support of the contention that an inoperative prior art device may not be relied upon as an anticipation. That this is a general rule may be conceded, but it is also quite well settled that an inoperative device may be a valid reference if the defect may be cured merely by mechanical skill not requiring invention. In re Barsky, 62 F.2d 192, 20 C.C.P.A.,Patents, 779, 781, and cases therein cited.

However, it seems to us that appellant does not correctly construe the board's statement from which he deduces that inoperativeness of the Trost device is stated or conceded. We do not understand the board's holding to be that the Trost device as shown is inoperative. Rather we understand its decision to mean as, in effect, it it interpreted in the brief of the Solicitor for the Patent Office, that the method of assembling described in the patent is not possible. As has been indicated already, all the claims here involved are for structure, and the method of assembling the structural parts is not in issue. The decision, it may be remarked, does not use any expression suggesting inoperativeness of the structure shown.

A fair interpretation of the board's decision, as a whole, especially when read in connection with that of the examiner (who says nothing of inoperativeness) which it affirms, is that the Trost patent discloses a device which shows tubes in a burner head, the tubes being capable of being turned to such positions that the nozzles of the tubes may be adjusted relative to each other as desired. The specification of the patent recites: " * * * I provide means whereby * * * the burner tubes g may, as will be understood, be turned into any desired position, and the nozzles h separated or brought closer together as may be desired, and while I have shown and described the preferred form of my improvement, my invention is not limited to the details of construction herein shown and described, and changes therein and modifications thereof may be made, within the scope of the appended claims, * * *."

We think there was no error in the rejection based upon the patent to Trost.

With respect to the limitations in claims 25 and 26, specifying a ball-and-socket joint (also specified in claim 28), we agree with the tribunals below that since such joints are shown to be used in this art, as illustrated by the patents to Coutu and Underwood et al., no invention was involved in substituting them for the flexible joints disclosed by the patent to Tilley.

The special assignment of error respecting claims 27 and 28 is not specific in pointing out the limitations relied upon to lend patentability thereto, but it is fairly inferable from the examiner's decision and the argument in appellant's brief that reference was had to the joint or adjustable clamping means, represented by the locking nut 44 above illustrated. The patent to Underwood et al. discloses a "gland or neck ring" which enters a "stuffing box" and which is secured to a conduit by stud bolts. We are unable to see wherein it required other than mere mechanical skill to substitute appellant's arrangement for that of Underwood et al.

The decision of the Board of Appeals is affirmed.

Affirmed.